SMITH VS. SHERRY.

*September 20 — October 10, 1882.*

*Evidence.*

The evidence in this case (for which see opinion), is held to show almost conclusively that a note and mortgage placed in the hands of the defendant, as collateral security, had been fully accounted for by him and had become his property.

APPEAL from the Circuit Court for *Winneoago* County. The case is stated in the opinion. There was a verdict for the defendant; and from a judgment thereon, the plaintiff appealed.

*James Freeman,* for the appellant.
*Moses Hooper,* for the respondent.

ORTON, J. The plaintiff alleges in his complaint that in 1873 he held the note and mortgage of one John J. Baldry for the sum of $600, and placed the same in the hands of the defendant to secure him against his liability as indorser of the plaintiff's two notes in the aggregate of $553.74, and that the plaintiff paid said notes, and that the defendant refused to deliver up on demand the note and mortgage. The defendant, in his answer, admits the allegations of the complaint, but alleges that in the year 1874 he became surety for the plaintiff on several bonds given by him in the prosecution and defense of certain actions in court, and that it was agreed the said note and mortgage should remain in his hands as security for the same, and that he has been compelled to pay and has paid on said bonds nearly the amount of said note and mortgage, and that the same thereby and by consent of the plaintiff became his property. There was in evidence on the trial the written demand for the note and mortgage, by the plaintiff, dated and served on the defendant on the 10th of October, 1879, the day before the

summons in this action was served, in which it was stated that the note and mortgage were in the hands of the defendant as collateral security for his being surety on said bonds, as well as indorser on said notes, and this corroborates the testimony of the defendant in this respect. The testimony of the defendant tended to show that he paid, on account of his being surety on said bonds, in one case $557.23, and the sum of $300 in another suit for the plaintiff, and that he had fully accounted to the plaintiff for the note and mortgage, and that it was surrendered up to him and became his property. It appears that since the note and mortgage were so left with the defendant there have been numerous, various, and complicated business transactions between the parties, amounting to $20,000 or $30,000, and only a part of them appear upon their books of account, and this matter of the note and mortgage was permitted by the plaintiff to sleep for about five years before any demand or suit. It is not surprising that the defendant could not clearly remember just when or how the note and mortgage became his property, but of one thing he seems to be positive, and that is, that he fully paid for the same and accounted to the plaintiff for it long ago, and that they were surrendered up to him by the plaintiff to be his property absolutely. The memory of the plaintiff in regard to these transactions is at least no clearer, and that it is not very reliable in respect to even recent events appears from the fact that he denied in his complaint and testimony that the note and mortgage were left with defendant as security for his becoming surety on the bonds, and admitted it in his written demand only a day or two before this suit was commenced.

The defendant testified in respect to his accounting with the plaintiff for the note and mortgage as follows: " I had a settlement with *Mr. Smith* in regard to this Baldry note. I recollect distinctly that I bought the note of him, in settlement in some way, on some claims, and I can't tell just how it

was. I should say it was some time in 1875. I then made a payment of whatever balance there was going to him on these notes, and thereafter I used them as my own property. After that *Mr. Smith* claimed these notes were his, and should be returned to him. He set up a claim, I should judge it might be six months or a year afterwards. Mr. Kellogg, my clerk, was present. It was in my office. We had quite a considerable business at that time, and this claim was set up on this Baldry note that he owned it. I explained it to his satisfaction, as I supposed. He made a few words and then he did not say anything more all the time he was in the office, and I supposed he was well satisfied he had his pay for it. I explained to him when and how I paid him. . . . It was fresh in my mind. My clerk and I talked it over. I had transactions with him after that. He never mentioned the Baldry note; never came up again until we had some trouble several years afterwards, he set up this claim again." The testimony of Kellogg, the clerk, substantiates this evidence. It appears that not only many business transactions of various kinds and involving large sums of money took place between the parties, and for many years afterwards, but that the plaintiff had given the defendant his note, at least in one instance, and no mention made of this note, which are very strong corroborating circumstances in favor of the defendant's claim of its absolute ownership.

The evidence so strongly preponderates in favor of the defense as to be nearly conclusive. The charge of the court was fair, full and correct.

*By the Court.*— The judgment of the circuit court is affirmed.